UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ERIC ROGER WELKER, JR., ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:05-CV-661 RM |
| ) | |
| MIAMI CORRECTIONAL FACILITY, ) | |
| et al., ) | |
| ) | |
| Defendants ) | |

OPINION and ORDER

Eric Welker, a prisoner committed to the Indiana Department of Correction, filed suit pursuant to 42 U.S.C. § 1983 alleging a violation of his rights by the Miami Correctional Facility ("MCF"), Counselor Randall McGaugh, and the Medical Department at MCF. Mr. Welker's claims against the MCF and its medical department were dismissed in April 2006, and Mr. Welker was granted leave to proceed on his Eighth Amendment failure to protect claim against Randall McGaugh in his individual capacity. Mr. McGaugh was Mr. Welker's counselor in December 2003 and January 2004, when the events at issue occurred. This cause is now before the court on Mr. McGaugh's summary judgment motion, to which Mr. Welker has filed his objection. For the reasons that follow, the court grants Mr. McGaugh's motion.

FACTS

The facts viewed in the light most favorable to Mr. Welker are as follows. In late December 2003 or on January 1, 2004, several black men approached Mr. Welker, who is white, in the lunch line at MCF. Mr. Welker says one of the men told him that "they were going to send somebody to see him," a message Mr. Welker interpreted as a threat to beat or fight him. Mr. Welker says he didn't recognize the men or know any of their names, but he knew that they weren't from the B Housing Unit, where he lived.

On January 1, Mr. Welker requested a meeting with Mr. McGaugh, his counselor. The men met the following day, and Mr. Welker reported the threat to Mr. McGaugh and asked to be moved. Mr. Welker says Mr. McGaugh asked for the names of the men involved and when Mr. Welker couldn't provide any names, Mr. McGaugh said there was nothing he could do unless Mr. Welker identified the men who made the threat. According to Mr. Welker, Mr. McGaugh said the incident didn't seem like a substantial threat, but, rather, like "somebody blowing off steam."

On January 3, Mr. Welker went to the chow hall and then to the recreation building. Before starting his workout routine, Mr. Welker went to the restroom in the recreation building, an area he knew to be outside the guards' sight. Mr. Welker reports that there were two men in the restroom when he walked in, but their presence didn't cause him concern or to feel that he was in danger. Mr. Welker engaged in a brief conversation with the man who was on his left side,

2

when suddenly the other man attacked him from the right. Mr. Welker was stabbed and seriously injured. Mr. Welker reports that he saw, but didn't recognize, the man on his left; he says he never saw the face of the man who attacked him.

Mr. Welker claims that the threat delivered to him in the chow line and his attack a few days later were connected. Mr. Welker maintains that had Mr. McGaugh taken action when Mr. Welker asked him to do so, the attack would not have occurred and Mr. Welker would not have been injured. Mr. Welker alleges in his complaint that Mr. McGaugh's negligence violated Mr. Welker's right to equal protection, "which amounts to deliberate indifference."

Mr. McGaugh has moved for summary judgment on Mr. Welker's claims, arguing that any failure on his part to change the status quo with respect to Mr. Welker's housing was reasonable, especially in light of Mr. Welker's admission that he didn't feel that he was in danger when he went into the recreation building restroom, and there is no evidence of a nexus between the chow line threat and the later attack on Mr. Welker. Mr. McGaugh concludes that the evidence establishes that his actions didn't amount to deliberate indifference to a substantial risk that Mr. Welker would suffer serious harm.

3

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. R. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). There is no genuine issue of material fact when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in its favor. Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999).

DISCUSSION

Prison officials have a duty to take reasonable steps to protect inmates from violence at the hands of other inmates. Farmer v. Brennan, 511 U.S. 825, 833 (1994). While not every injury within a prison amounts to a constitutional violation, *id.* at 834, a prison official's deliberate indifference to a "substantial risk of serious harm to an inmate" violates the Eighth Amendment. *Id.* at 828. Deliberate indifference is comparable to criminal recklessness and is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992). The phrase "substantial risk" in the context of prison attacks refers to "risks so great that they are almost certain to materialize if nothing is done." Brown v. Budz, 398 F.3d 904, 911 (7th Cir. 2005).

To be liable, a defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." Farmer v. Brennan, 511 U.S. at 837; *see also* Washington v. LaPorte County Sheriff's Dep't, 306 F.3d 515, 518 (7th Cir. 2002) ("To demonstrate "deliberate indifference," [the plaintiff] must show actual knowledge by the officials and guards of the existence of the substantial risk and that the officials had considered the possibility that the risk could cause serious harm."); Armstrong v. Squadrito, 152 F.3d 564, 577 (7th Cir. 1998) ("the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though

5

he could have easily done so"). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." McGill v. Duckworth, 944 F.2d 344, 347 (7th Cir. 1991).

Under the facts of this case, then, the court must determine, first, whether, before Mr. Welker's attack, the risk that such injury would result to him was "substantial," and, second, whether Mr. McGaugh knew of the risk. *See* Riccardo v. Rausch, 375 F.3d 521, 526 (7th Cir. 2004) ("It is not enough . . . that the [prison official] *ought* to have recognized the risk."). Because "ordinary negligence by prison officials is not enough to show an Eighth Amendment violation," Washington v. LaPorte County Sheriff's Dep't, 306 F.3d 515, 518 (7th Cir. 2002), Mr. Welker must present evidence that Mr. McGaugh "actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless." Pierson v. Hartley, 391 F.3d 898, 902 (7th Cir. 2004); *see also* Johnson v. Snyder, 444 F.3d 579, 583 (7th Cir. 2006) ("To be personally responsible, an official must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye.").

Mr. McGaugh says he is entitled to judgment on Mr. Welker's claims because no evidence would support a finding that he was aware that Mr. Welker faced a substantial risk of attack by unknown assailants. Mr. McGaugh maintains that based on Mr. Welker's description of the incident, he couldn't properly assess the risk to Mr. Welker because Mr. Welker didn't know the names or identity of the men who threatened him. The only information provided by Mr. Welker was

6

that the men didn't live in B Housing Unit, where Mr. Welker was housed. Mr. McGaugh says that since Mr. Welker couldn't identify the men, his response to Mr. Welker's report of a threat was reasonable.

Mr. McGaugh explains there are many reasons for not moving an offender who hasn't provided prison officials with enough information to properly identify a threat. According to Mr. McGaugh,

> I learned from dealing with such matters that offenders would not be moved unless they were able to provide staff members with enough information to identify the threat. One reason for requiring information is that some inmates are not truthful and claim to be in danger when they are not. Moving an offender who is not in danger can put him in contact with a person whom he wishes to harm. . . . Each time an offender is moved, there is a chance of placing him with or near an inmate who will be a threat to him, or to whom he will be a threat. These considerations are particularly true at MCF, where almost all offenders are double-celled and therefore in close contact with at least one other inmate. . . . Another reason for requiring that a threat be identified is to permit an evaluation of the best way to deal with it. Threats can be avoided by moving the source of the threat or by moving the object of the threat or both, but officials must decide which individuals are to be moved and to which places they will be moved. Until there is enough information to determine the identity and location of the person or persons who present the threat, the only available remedy is to isolate the object of the threat.

McGaugh Dec., ¶¶ 10, 12-13, 15-16, 18-20. Mr. McGaugh concludes that "[n]either Mr. Welker nor anyone else provided me with enough information concerning any threats made to him to identify a threat or indicate how it might be avoided." McGaugh Dec., ¶ 21.

Mr. McGaugh says that because Mr. Welker knew the men who threatened him didn't live in his housing unit, Mr. Welker would have been safe had he

7

remained in the B Housing Unit as "[o]ffenders assigned to one housing unit at MCF were not permitted to enter other housing units." McGaugh Dec., ¶¶ 22-23. Mr. McGaugh claims that Mr. Welker chose to leave a secure area to go to the recreation building. Mr. McGaugh says Mr. Welker knew that entering the restroom in the recreation building would take him out of direct observation of prison personnel but he believed it to be safe. *See* Welker Dep., at 65. Mr. McGaugh points to Mr. Welker's additional testimony that had he believed he was in danger after he entered the restroom, he would have run out of the room. *See* Welker Dep., 63-64. Mr. McGaugh concludes that Mr. Welker "seeks to impose liability upon his former counselor for not recognizing the possibility that he would be assaulted at some point, yet [Mr. Welker] himself did not recognize danger when he was in the midst of it." Memo., at 14.

Mr. McGaugh lastly argues that Mr. Welker has shown no connection between the men who threatened him and the men who assaulted him. That the men who made the threat and the men who assaulted Mr. Welker were of the same race, Mr. McGaugh maintains, is insufficient to establish the necessary nexus. Mr. McGaugh says there is no evidence to show that the alleged threat was related to the beating that occurred some time later, so he can't be held liable.

Mr. Welker responds that the facts establish that his Eighth Amendment rights were violated: he says he told Mr. McGaugh of the threat and Mr. McGaugh's appreciation of the risk "may be inferred by [Mr. McGaugh's] statement to [Mr. Welker] that the assailants were merely blowing off steam."

8

Resp., at 4-5. Mr. Welker claims that once he told Mr. McGaugh of the threat and asked to be moved, Mr. McGaugh did nothing, and "[i]t does not get any more 'deliberately indifferent' than that." Resp., at 5. The court can't agree.

The facts establish that the assault on Mr. Welker resulted in serious harm to him, but even viewing the facts in the light most favorable to Mr. Welker, Mr. Welker hasn't carried his burden of demonstrating that Mr. McGaugh was aware of "a substantial risk beforehand that that serious harm might actually occur." Borwn v. Budz, 398 F.3d 904, 910 (7th Cir. 2005). Mr. Welker says Mr. McGaugh knew of the threat, but Mr. Welker's testimony shows that the only information he conveyed to Mr. McGaugh was that unknown men who didn't live in his housing unit said they were going to send someone to see him. Mr. Welker hasn't alleged or presented any evidence to support a finding that the information he provided was sufficiently specific to permit Mr. McGaugh to conclude or even evaluate whether the threat constituted a "substantial risk" that Mr. Welker would suffer harm. Mr. Welker says he sent a letter to Ms. Knight indicating he had received death threats from the Black Disciples gang, but that letter, written in November 2004, doesn't establish that Mr. Welker provided Mr. McGaugh with sufficient information about a threat from an unknown person in January 2004.

Mr. Welker maintains that had he been moved, the attack wouldn't have occurred. Mr. McGaugh explains that Mr. Welker wasn't moved based on the facility's policy of not moving inmates until officials have enough information to determine the identity and location of the person(s) who presented the threat. Mr.

9

Welker hasn't challenged that policy or presented any evidence of a contrary policy or practice. Mr. Welker acknowledged that because he didn't know the identity or housing area of the men who threatened him, remaining in the B Housing Unit was the safest approach: "I wasn't worried about it a whole bunch, 'cause they wasn't in my dorm." Welker Dep., at 19. Mr. Welker admitted, too, that moving him to the another area of MCF wouldn't have eliminated the danger. *See* Welker Dep., at 28-29. Mr. Welker's unsupported conclusion that had Mr. McGaugh contacted "the right superiors," he would have been moved and the attack wouldn't have occurred is insufficient to establish that Mr. McGaugh knew about the events that led to the attack and facilitated, approved, condoned, or turned a blind eye to that conduct. Johnson v. Snyder, 444 F.3d 579, 583 (7th Cir. 2006).

Mr. Welker claims Mr. McGaugh's comment that the threat may have been someone blowing off steam creates an inference that Mr. McGaugh "actually appreciated the risk." Resp., at 4. The record supports a contrary conclusion. Mr. McGaugh insists he didn't have sufficient information to conclude that Mr. Welker faced a threat or determine how to avoid any potential harm. Mr. Welker hasn't challenged Mr. McGaugh's statement in that regard. Mr. Welker testified that when he reported the threat, Mr. McGaugh believed the incident didn't "seem like a substantial threat." Welker Dep., at 66. Mr. Welker hasn't argued or alleged that Mr. McGaugh had reason to know of any other circumstances that would have put him on notice of a substantial risk of harm to Mr. Welker. Mr. Welker's summary conclusion that Mr. McGaugh appreciated the risk, without more, is insufficient

10

to establish that Mr. McGaugh recognized a "substantial risk" that Mr. Welker would suffer future harm.

Mr. Welker hasn't presented evidence sufficient to establish that Mr. McGaugh had actual knowledge of a substantial risk of serious harm to Mr. Welker or that Mr. McGaugh was aware of facts from which an inference could be drawn that a substantial risk of harm existed. Mr. Welker hasn't demonstrated that Mr. McGaugh's actions amounted to deliberate indifference, and Mr. McGaugh is entitled to summary judgment on Mr. Welker's claims against him.

## CONCLUSION

Based on the foregoing, the motion of Randall McGaugh for summary judgment [docket # 34] is GRANTED, and the clerk is directed to enter judgment accordingly.

SO ORDERED.

ENTERED:   February 4, 2008

　　　　　　　　　　　　　/s/ Robert L. Miller, Jr.
　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　United States District Court